MONTANA MANGANESE CO., Respondent, v. RINGE-
LING, Appellant.

(No. 4,924.)

(Submitted October 25, 1922. Decided December 11, 1922.)

[211 Pac. 333.]

*Public Lands—Unpatented Mining Claims—Transfer to Land
Office Employee—Invalidity.*

Public Lands—Unpatented Mining Claims—Disability of Deputy Mineral
Surveyor to Take Title—United States Statutes—General Land Office
Regulations.
1. Under section 452, United States Revised Statutes, prohibiting
employees in the United States Land Office from directly or indirectly
purchasing or becoming interested in the purchase of public land,
and under the circular issued by the Commissioner of the General
Land Office (11 Land Dec. 348), calling attention of the employees
of the general and local land offices to the provision, *held,* that a
deputy mineral surveyor, who falls within the classes of employees
mentioned in both, could not lawfully, while holding his office, take
title to an unpatented mining claim, and therefore his attempted
transfer thereof to another did not confer any right upon the latter.

Same—Decisions of Land Department Entitled to Consideration by
Courts.
2. While decisions of the Land Department and circulars issued
by it to local land offices are not binding upon the courts, they are
entitled to respectful consideration and are not to be departed from
except where they are clearly erroneous.

Courts—Decisions of United States Supreme Court Binding on State
Courts.
3. The decisions of the supreme court of the United States con-
struing a federal statute, are binding upon state courts, and, until
modified or overruled, are conclusive.

Public Lands—Transfer to Aliens Voidable.
4. *Obiter:* An entry of public land by or transfer to an alien is
not absolutely void, but voidable only at the election of the govern-
ment.

Mining Claims—Annual Representation Work by Stranger—Effect.
5. Annual representation work on a mining location must be done
by the owner of the claim or at his instance or request, and work
done by a mere stranger to the title will not inure to the benefit
of the owner.

Appeals from District Court, Granite County; George B.
Winston, Judge.

Conclusiveness of decisions or findings of the Land Department,
see notes in 20 Am. Dec. 273; L. R. A. 1918D, 597.

SUIT by the Montana Manganese Company against Alex B.
Ringeling. From the judgment for plaintiff and from an
order denying his motion for new trial, defendant appeals.
Affirmed.

*Mr. D. M. Durfee* and *Mr. E. B. Howell,* for Appellant,
submitted an original and a supplemental brief and argued the
cause orally.

When the statute, section 452 (8 Fed. Stats. Ann., p. 490;
U. S. Rev. Stats., sec. 698), prohibits any agent, employee,
*etc.,* from purchasing public lands it doubtless has reference to
purchasing from the government and not from the individual,
who is in privity with the government. But the statutory
prohibition goes further and prohibits him from becoming
interested in the purchase of any of the public land. To be
sure, a deputy mineral surveyor cannot obtain patent for any
public land because that constitutes a purchase on the one
hand and is expressly prohibited on the other. The govern-
ment says: "You can't locate any of my land and you can't
buy any of my land." But the question at issue here is
altogether different; it is this: Where the original entrymen
and many serially succeeding grantees are all qualified entry-
men, does the mineral land included in such original entry
instanter revert to the government and become instanter sub-
ject to relocation when it passes by inheritance or deed to a
deputy mineral surveyor so as to preclude his passing title
to another grantee who is himself a qualified entryman?

There are no cases known to us where the question has been
raised on the provisions of section 452, sought to be applied
to conditions even similar to those in the case at bar. The
application of that statute has been applied to three classes
of cases and to those only so far as our researches go, *viz.:*

(1) Where the original entryman was incompetent by
reason of being an agent or employee of the General Land
Office; (2) Where a disqualified agent or employee of said
office sought to obtain patent; and (3) Where his right was
contested during the period that such employee or agent

actually held the land under a location of some public land character.

The defendant here does not come within either of these classes. He was not an original entryman nor a mineral surveyor, and is not himself disqualified. But along his chain of title is a link that is sought to be broken because that link is the period in and during which a deputy mineral surveyor did own it, he was "interested," in the words of the federal statute.

We take the general rule to be this: While the same qualification is required in those who may purchase mining property as is required of those who may possess such property, this does not render such possession any the less property which is susceptible of distinct ownership or involve the consequence that their transfer to unqualified persons would operate as a forfeiture. (*Manuel* v. *Wolff*, 152 U. S. 505, 38 L. Ed. 532, 14 Sup. Ct. Rep. 651, 18 Morr. Min. Rep. 85 [see, also, Rose's U. S. Notes]; *Lohmann* v. *Helmer*, 104 Fed. 178; *North Noonday Min. Co.* v. *Orient Min. Co.*, 1 Fed. 522, 6 Sawy. 299, 9 Morr. Min. Rep. 529.) A person qualified to locate a mining claim may sell and convey his possessory right to a person not so qualified and a qualified person may purchase from such unqualified person and obtain a valid title to an unpatented mining claim. (*Ferguson* v. *Neville*, 61 Cal. 356; *Gorman Min. Co.* v. *Alexander*, 2 S. D. 557, 51 N. W. 346.)

So in the case at bar, Hugh T. Murray, the locator of the Little Bee lode, and his grantees and successors up to the time of the purchase of N. B. Ringeling were qualified holders of the said claim, and could dispose of the same to any person they saw fit. (*Holdt* v. *Hazard*, 10 Cal. App. 440, 102 Pac. 541.)

*Mr. Wingfield L. Brown, Mr. R. Lewis* and *Messrs. Murphy & Whitlock*, of Counsel, submitted a brief; *Mr. Wingfield L. Brown* argued the cause orally.

The supreme court of the United States has decided that the title to such public lands held by an officer mentioned

herein so prohibited is void. (*Prosser* v. *Finn,* 208 U. S. 67, 52 L. Ed. 392, 28 Sup. Ct. Rep. 225 [see, also, Rose's U. S. Notes]; *Waskey* v. *Hammer,* 223 U. S. 85, 56 L. Ed. 359, 32 Sup. Ct. Rep. 187.)

It is seriously urged in both of appellant's briefs that section 452 only prohibits such officers from locating public lands, and it is undoubtedly true that they cannot, but the word "locate" is not mentioned in the Act, but the word "purchase" is used for the purpose of covering all methods of acquiring such public domain.

Strange to say they give the word purchase mentioned in the Act no effect, but attempt to destroy the entire purpose to be accomplished by the Act, by limiting the penalty involved to only one method of securing title to the public domain. N. B. Ringeling comes directly within the prohibition. He was a deputy mineral surveyor when he received the deed from E. A. Hannah. He purchased the claim from Hannah; and he is attempting to become interested in the purchase of this land by his brother from the United States. "The purpose of the prohibition is to guard against the temptations and partiality likely to attend efforts to acquire public lands, or interests therein, by persons so situated, and thereby to prevent abuse and inspire confidence in the administration of the public land laws, * * * and that the term 'purchase' is inclusive of the various modes of acquiring title to or rights in public lands under the general laws regulating their disposal." (*Waskey* v. *Hammer, supra.*)

The appellant also insists that the only penalty inflicted is removal from office. Their opinion, however, is directly in conflict with the supreme court of the United States in the *Waskey Case.*

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is an ordinary adverse suit instituted under the provisions of section 2326, United States Revised Statutes (6 Fed. Stats. Ann., p. 562; U. S. Comp. Stats., sec. 4623), to have

determined the relative rights of the parties to 3.5 acres of land, the area in conflict between their respective quartz lode locations. So far as necessary to a decision of the question presented, the facts are these:

The Little Bee quartz lode mining claim was located by Hugh T. Murray in 1887 and thereafter by mesne conveyances it passed to E. A. Hannah. Murray and every subsequent owner down to and including Hannah was concededly a duly qualified locator. In January, 1913, Hannah assumed to convey the claim to N. B. Ringeling, who in 1916 conveyed the same claim to his brother, Alex B. Ringeling. In August, 1917, Alex B. Ringeling reconveyed the claim to N. B. Ringeling, who held it until February 2, 1918, when he again conveyed it to Alex B. Ringeling, who made application for patent in February or March, 1919. In the meantime, in January, 1918, and while the title to the Little Bee mining claim was held by N. B. Ringeling, one M. L. Leydig located the Stray Horse claim, embracing a part of the territory covered by the Little Bee, and in January, 1919, Leydig conveyed the Stray Horse claim to the Montana Manganese Company, which company duly adversed Alex B. Ringeling's application for patent, and within the period allowed by law commenced this action. At all times from 1895 to 1920 N. B. Ringeling was a duly appointed, qualified and acting United States deputy mineral surveyor for the state of Montana and for the district in which these claims are located. The trial court held that the attempted transfer by Hannah to N. B. Ringeling in 1913 constituted, in effect, an abandonment of the Little Bee claim, leaving the area in dispute open to location by Leydig in 1918, and rendered and had entered a judgment in favor of the plaintiff. The defendant has appealed from the judgment and from an order denying his motion for a new trial.

The principal question presented for our determination is [1] this: What was the effect of the transfer by Hannah of an unpatented mining claim to a United States deputy mineral surveyor, and could such surveyor, while still holding

his office, convey to a third party, a qualified entryman, a title to the claim valid as against everyone except the government of the United States? Section 452, United States Revised Statutes (8 Fed. Stats. Ann., p. 490; U. S. Comp. Stats., sec. 698) provides: "The officers, clerks, and employees in the General Land Office are prohibited from directly or indirectly purchasing or becoming interested in the purchase of any of the public land, and any person who violates this section shall forthwith be removed from his office." This statute was enacted in 1812 (2 Stats. 716), amended in 1836 (5 Stats. 107), and, with further slight amendments, carried into the revision of 1872 and has since been in full force and effect. In the early case of *Lock Lode*, 6 Land Dec. 105, the Land Department held that a deputy mineral surveyor is not within any of the inhibited classes mentioned in section 452. In the later case of *Herbert McMicken* it was held that clerks in the office of the surveyor general of the then territory of Washington could not make valid locations upon the public land, and that their attempted locations were subject to cancellation even after transfer to an innocent third person. On appeal to the Secretary of the Interior that decision by the Commissioner of the General Land Office was approved (10 Land Dec. 97), and on rehearing Secretary Noble reaffirmed his decision, and directed the General Land Office to formulate a circular embodying his views as then expressed (11 Land Dec. 96). Pursuant to that direction the circular of September 15, 1890, was promulgated (11 Land Dec. 348), in which section 452 is quoted and reference is made to the construction placed thereon in the *McMicken Case*. The circular then concludes as follows: "In accordance with said decision, all officers, clerks, and employees in the offices of the surveyors general, the local land offices, and the General Land Office, or any persons, wherever located, employed under the supervision of the Commissioner of the General Land Office, are, during such employment, prohibited from entering, or becoming interested, directly or indirectly, in any of the public lands of the United States." The terms of that circular

were applied and the principles announced in the *McMicken Case,* followed in *Muller* v. *Coleman,* 18 Land Dec. 394, and in *J. S. M. Neill,* 24 Land Dec. 393.   In *Floyd* v. *Montgomery,* 26 Land. Dec. 122, the decision in the *Lock Lode Case* was in terms overruled, and it was held that a deputy mineral surveyor is within the classes mentioned in section 452, and prohibited from making a location upon public land.   To the same effect are the following cases: *Frank A. Maxwell,* 29 Land Dec. 76; *Alfred Baltzell,* 29 Land Dec. 333; *Seymour K. Bradford,* 36 Land Dec. 61, and *Philip Contzen,* 37 Land Dec. 497.   In the case of *Ricard L. Powel,* 39 Land Dec. 177, it appeared that Powel, a deputy mineral surveyor, had made lieu selections under the Act of June 4, 1897.   These selections were held to be invalid, and in his opinion, Assistant Secretary Pierce said: "He [Powel] is therefore clearly within the spirit of section 452 and also the regulations of the department, which prohibit anyone connected with the public land service from dealing in public lands of the United States in any manner whatever."   In the case of *Charles F. Saunders,* 40 Land Dec. 217, decided August 2, 1911, it was held that a deputy mineral surveyor, who purchased shares of stock in a corporation which owned two unpatented placer claims, thereby violated the terms of section 452, for which offense his commission was revoked.

While the circular of September 15, 1890, and these decisions **[2]** of the Land Department are not binding upon the courts, they are entitled to respectful consideration, and are not to be departed from, except where they are clearly erroneous. (*United States* v. *Moore,* 95 U. S. 760, 24 L. Ed. 588 [see, also, Rose's U. S. Notes]; *Hastings & D. R. Co.* v. *Whitney,* 132 U. S. 357, 33 L. Ed. 363, 10 Sup. Ct. Rep. 112.)   They disclose the views entertained by the Department as to the proper construction to be placed upon the provisions of section 452.   In 2 Lindley on Mines, third edition, section 661, the author says: "The Land Department at one time held that they [deputy mineral surveyors] were not prohibited from making mineral entries within the district for which they are ap-

pointed. By subsequent rulings it has been determined that they come within the inhibition of section 452 of the Revised Statutes, and are prohibited from entering or becoming interested in any of the public lands of the United States, upon penalty of forfeiture of their official position.''

In *Lavagnino* v. *Uhlig*, 26 Utah, 1, 99 Am. St. Rep. 808, 71 Pac. 1046, the supreme court of Utah held that a mineral location made by a deputy mineral surveyor was void, that such surveyor was not only prohibited from making the entry, but ''he was also prohibited at that time from doing any of the acts upon the performance of which, under the provisions of the mining law of 1872, the right of making an entry or purchase from the government depends.'' That cause was removed to the supreme court of the United States where the decision of the Utah court was upheld, but it was deemed unnecessary to pass upon the question whether a deputy mineral surveyor is within the prohibited classes mentioned in section 452 (198 U. S. 443, 49 L. Ed. 1119, 25 Sup. Ct. Rep. 716).

In *Prosser* v. *Finn*, 208 U. S. 67, 52 L. Ed. 392, 28 Sup. Ct. Rep. 225, it was held that a special agent of the General Land Office is an employee of that office within the meaning of section 452, and as such cannot acquire, by location upon public land, any interest that will prevent the government from canceling his entry. Finally, in *Waskey* v. *Hammer*, 223 U. S. 85, 56 L. Ed. 359, 32 Sup. Ct. Rep. 187, decided in January, 1912, the court determined definitely that a deputy mineral surveyor is within the classes prohibited by section 452 from purchasing or becoming interested .in the purchase of public lands. (See; also, *United States* v. *Havenor* (D. C.), 209 Fed. 988.) In the *Waskey Case* the court referred to the terms of section 452, to the purpose of that statute, and to the duties of a deputy mineral surveyor in reaching its conclusion that such officer is within the inhibition of the statute. The court then said: ''That the construction which we here place upon section 452 is the one prevailing in the Land Department is shown in its circular of September 15, 1890, 11 Land Dec. 348, wherein it is said.'' The court then quoted

the language of the circular which we have set forth above and continued: "The published decisions of the Secretary of the Interior, although disclosing instances in which that construction has been departed from or doubted [citing cases], show that in the main it has been closely followed." The court then held that an entry by a deputy mineral surveyor is not merely voidable at the instance of the government, but absolutely void, and that the penalty mentioned in the statute —removal from office—is not exclusive.  These decisions by [3] the supreme court of the United States construing a federal statute are binding upon this court, and, until modified or overruled, are conclusive of all argument upon the subject.

But it is contended by counsel for defendant that the decision in *Waskey* v. *Hammer* does not go further than to hold that a deputy mineral surveyor cannot make a valid location upon or receive patent to public land, and, since N. B. Ringeling was neither the locator of the Little Bee claim nor the applicant for patent, his status as an owner of the claim intermediated the location, and application for patent has not been determined, and counsel seek to arrive at a proper solution of his status by a process of reasoning from what they claim to be an analogous case—that is, a case where the locator or intermediate owner is an alien—but their reasoning fails, for the cases are not analogous.  Although the public lands are open to entry only to citizens of the United States or to those who have declared their intention to become such citizens (sec. 2319, U. S. Rev. Stats. [6 Fed. Stats. Ann., p. 509; U. S. Comp. Stats., sec. 4614]), there is not any express prohibition against an alien holding public land, and it is now settled beyond controversy that an entry by or transfer [4] to an alien is not absolutely void, but voidable only at the election of the government (*Manuel* v. *Wulff*, 152 U. S. 505, 38 L. Ed. 532, 14 Sup. Ct. Rep. 651), whereas the location by a deputy mineral surveyor is absolutely void (*Waskey* v. *Hammer*, above).

If the construction given to the provisions of section 452 by the Land Department, as indicated above, correctly interprets the intention of the Congress in enacting the statute, there cannot be any question that the attempted transfer from Hannah to N. B. Ringeling was void, and hence the transfer by N. B. Ringeling to Alex B. Ringeling did not confer any right upon the latter. It is our judgment that the Land Department's construction is the only admissible one; that it was the intention of the Congress to prohibit a deputy mineral surveyor, not merely from making a location upon public lands, but as well from becoming interested in any of such lands, either directly or indirectly, while he continues to hold his office. If this be not true, then such officer may do indirectly the very thing he is prohibited from doing directly, namely, acquire a valid location, with every beneficial interest therein, by the simple device of purchasing from a qualified locator. The evil which the statute was intended to remedy is as patent in the one instance as in the other. The fact that the circular of September 15, 1890, is apparently quoted with approval by the supreme court in the *Waskey Case* would indicate that the construction given to section 452 by the Land Department meets with the approval of the supreme court.

Counsel for defendant contend further that, if the transfer by Hannah to N. B. Ringeling was void, title to the Little Bee claim remained in Hannah; hence the area in conflict was not open to location by Leydig in 1918; but this assumes that annual representation work done on that claim by N. B. Ringeling or Alex B. Ringeling, or by both of them, after 1913, inured to the benefit of Hannah, even though Hannah knew nothing about it, and even though such work was not done at his instance or request or for his use or benefit. The [5] rule recognized by the authorities generally is that the annual work must be done by the owner of the claim or at his instance or request, and that work done by a mere stranger to the title will not inure to the benefit of the owner. (2 Lindley on Mines, sec. 633; 1 Snyder on Mines, sec. 494.) The trial

court was called upon to determine only the relative rights of plaintiff and defendant. Hannah was not before the court, and whether his attempted transfer to N. B. Ringeling constituted a technical abandonment of the claim or not is immaterial. The trial court held that Alex B. Ringeling is not entitled to the area in dispute, and with that conclusion we agree.

The judgment and order are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES COOPER, FARR and GALEN concur.