SANTA RITA OIL & GAS CO., Plaintiff, v. STATE BOARD
OF EQUALIZATION et al., Defendants.

(No. 7,504.)

(Submitted June 30, 1941.  Decided September 12, 1941.)

[116 Pac. (2d) 1012.]

Cause submitted on briefs of counsel.

*Mr. Louis P. Donovan,* for Plaintiff.

*Mr. John W. Bonner,* Attorney General, *Mr. Howard M. Gullickson,* First Assistant Attorney General, and *Mr. I. W. Choate,* Counsel for the State Board of Equalization, for Defendants.

*Mr. Y. A. Land,* of the Bar of Denver, Colorado, for Intervener The Texas Company.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

The defendant State Board of Equalization has petitioned for the vacation of the injunction order issued by this court on February 20, 1936, pursuant to its decision rendered on January 22, 1936, reported in 101 Mont. 268, 54 Pac. (2d) 117, 128. The order to show cause was issued and served upon the plaintiff, Santa Rita Oil and Gas Company, and upon the Texas Company and the Blackfeet Indian Tribe, interveners in the original action. A hearing was held on the order to show cause and briefs were filed. The modification is sought upon the ground that since the rendition of the decision and the issuance of the injunction order there have been changes in the applicable law, rendering the continuance of the injunction unjust, unreasonable and inequitable.

There is no occasion to repeat here the court's analysis of the original pleadings and issues. It is sufficient to say that in the complaint plaintiffs sought injunctive relief against the computation, assessment, levy and collection of certain taxes on oil and gas production under a lease of trust patent Indian land, upon the sole ground that in extracting the oil and gas the plaintiff was an instrumentality of the federal government and thus immune from taxation by the state. In its opinion this court found that the injunction should be issued forbidding the defendant board to take any steps for the collection of (1) royalty owners' net proceeds tax (imposed by Chapter 189 of the Political Code, sections 2088 to 2096.2, inclusive, Rev. Codes

1935), for the reason that the royalty interests accruing to the Indian allottee under a trust patent of lands whose legal title remains in the federal government may not become the subject of state taxation; (2) the operators' net proceeds tax (imposed by the same statutes), and the oil producers' license tax or gross production tax (imposed by Chapter 217 of the Political Code, sections 2397 to 2408, inclusive, Rev. Codes 1935) for the reason that the lessee under an oil and gas lease of Indian trust patent land was an instrumentality of the federal government and thus not taxable by the state. Thus the reasons for the decision were that the taxes were upon (1) the property or (2) an instrumentality of the federal government. The decision provides that the injunction is to continue ''until such time as appropriate and valid congressional consent is given to the imposition of any or all of these taxes.'' The injunction was issued ''forever'' restraining and enjoining defendant in the premises without referring to the above limitation, but the omission was immaterial, as noted in *Santa Rita Oil & Gas Co.* v. *State Board of Equalization, ante,* p. 224, 114 Pac. (2d) 521. It should be borne in mind (1) that the royalty owners' net proceeds tax was enjoined as a tax upon the *property* of the federal government, and (2) that the operators' net proceeds tax and the oil producers' license tax or gross production tax were enjoined as taxes upon an *instrumentality* of the federal government. While defendant's application is for the vacation of the entire injunction order it makes no attack upon the first ground—that the royalty owners' net proceeds tax was invalid because amounting to a tax upon the federal government's *property,* but only upon the second ground—that the taxes upon the operator were invalid because constituting taxes upon the federal government's *instrumentality.* No reason appearing why the injunction should not stand against the defendant board and its members as to the royalty owners' net proceeds tax, that matter is eliminated from consideration.

With reference to the other two taxes the defendant's contention is that the law has been changed, not by congressional Act, as contemplated in the decision, but by judicial interpre-

tation. As its authority upon the question this court in its decision cited *Choctaw, O. & Gulf R. R.* v. *Harrison,* 235 U. S. 292, 35 Sup. Ct. 27, 59 L. Ed. 234; *Gillespie* v. *State of Oklahoma,* 257 U. S. 501, 42 Sup. Ct. 171, 66 L. Ed. 338; *Jaybird Mining Co.* v. *Weir,* 271 U. S. 609, 46 Sup. Ct. 592, 70 L. Ed. 1112, and *Burnet* v. *Coronado Oil and Gas Co.,* 285 U. S. 393, 52 Sup. Ct. 443, 76 L. Ed. 815. The *Choctaw, Gillespie* and *Jaybird Cases* held the lessees of Indian trust patent land to be such instrumentalities of the federal government, and the *Coronado Case* held lessees of state school lands to be such instrumentalities of the state government, that their proceeds under the leases could not be taxed by the other government. The United States Supreme Court clearly considered the questions identical and in each case denied the right of either the state or the federal government to impose the tax on the instrumentality of the other. In 1938 the United States Supreme Court in *Helvering, Com'r of Internal Revenue,* v. *Mountain Producers Corporation,* 303 U. S. 376, 58 Sup. Ct. 623, 626, 82 L. Ed. 907, involving a federal tax upon the producer's share of oil taken from state school lands, expressly overruled the *Gillespie* and *Coronado Cases* upon the point, and in so doing necessarily overruled also the *Choctaw* and *Jaybird Cases* and many others like them. The holding was not that the lessee of state or federal land was not an instrumentality of the state or federal government, but rather that the tax upon the instrumentality did not under the circumstances constitute an interference with governmental functions.

The court said in the Mountain Producers decision, written by Mr. Chief Justice Hughes:

''The *Coronado Case* was decided as a corollary to the case of *Gillespie* v. *Oklahoma,* 257 U. S. 501, 42 Sup. Ct. 171, 172, 66 L. Ed. 338. The court there denied to Oklahoma the right to enforce its tax upon net income derived by a lessee from sales of his share of oil and gas received under leases of restricted Indian lands. (See *Choctaw O. & G. R. Co.* v. *Harrison,* 235 U. S. 292, 35 Sup. Ct. 27, 59 L. Ed. 234; *Indian Territory Illuminating Oil Co.* v. *Oklahoma,* 240 U. S. 522, 36 Sup. Ct.

453, 60 L. Ed. 779.) As Oklahoma was thus barred from enforcing its tax upon the income of a federal lessee of Indian lands, the Court in the *Coronado Case* held that a similar principle should be applied to the enforcement of a federal tax upon the income of the state's lessee of school lands.  *  *  *

"The ground of the decision in the *Gillespie case,* as stated by Mr. Justice Holmes in speaking for the Court, was that 'a tax upon the leases' was ' "a tax upon the power to make them, and could be used to destroy the power to make them," 240 U. S., page 530, 36 Sup. Ct. 453, 60 L. ed. 779,' and that a tax 'upon the profits of the leases' was 'a direct hamper upon the effort of the United States to make the best terms that it can for its wards.' In the light of the expanding needs of state and nation, the inquiry has been pressed whether this conclusion has adequate basis; whether in a case where the tax is not laid upon the leases as such, or upon the government's property or interest, but is imposed upon the gains of the lessee, like that laid upon others engaged in similar business enterprises, there is in truth such a direct and substantial interference with the performance of the government's obligation as to require immunity for the lessee's income. We have held that the ruling in the *Gillespie Case* should be limited strictly to cases closely analogous (*Burnet* v. *Coronado Oil & Gas Co.,* supra), and the distinctions thus maintained have attenuated its teaching and raised grave doubt as to whether it should longer be supported.

"In numerous decisions we have had occasion to declare the competing principle, buttressed by the most cogent considerations, that the power to tax should not be crippled 'by extending the constitutional exemption from taxation to those subjects which fall within the general application of non-discriminatory laws, and where no direct burden is laid upon the governmental instrumentality, and there is only remote, if any, influence upon the exercise of the functions of government.' "

The decision then cited a number of authorities and concluded:

"These decisions in a variety of applications enforce what we deem to be the controlling view—that immunity from non-

discriminatory taxation sought by a private person for his property or gains because he is engaged in operations under a government contract or lease cannot be supported by merely theoretical conceptions of interference with the functions of government. Regard must be had to substance and direct effects. And, where it merely appears that one operating under a government contract or lease is subjected to a tax with respect to his profits on the same basis as others who are engaged in similar businesses, there is no sufficient ground for holding that the effect upon the government is other than indirect and remote. We are convinced that the rulings in *Gillespie* v. *Oklahoma*, supra, and *Burnet* v. *Coronado Oil & Gas Co.*, supra, are out of harmony with correct principle and accordingly they should be, and they now are, overruled.

"In the instant case, we find no ground for concluding that the tax upon the profits of Wyoming Associated derived under its lease from the state constituted any direct and substantial interference with the execution of the trust which the state has assumed, and the decision of the Circuit Court of Appeals [10 Cir., 92 Fed. (2d) 78] to the contrary must be reversed."

It is a federal question whether these taxes constitute such an interference with the federal instrumentality as to be void and that question is now answered by the Supreme Court of the United States in the negative. Its decision upon the point is binding upon this court. (*Chesapeake & Ohio Ry.* v. *Martin*, 283 U. S. 209, 51 Sup. Ct. 453, 75 L. Ed. 983; *South Carolina* v. *Bailey*, 289 U. S. 412, 53 Sup. Ct. 667, 77 L. Ed. 1292; *Montana Manganese Co.* v. *Ringeling*, 65 Mont. 249, 211 Pac. 333; 21 C. J. S., Courts, p. 365, sec. 206; 14 Am. Jur. 336, sec. 117.) It is therefore the law that these nondiscriminatory taxes upon plaintiff's production of oil and gas under its lease do not constitute such a direct and substantial interference with any function of the federal government as to be invalid. The plaintiff and intervener do not assert that any such interference exists, but stand entirely upon the original decision in this case, which was based upon the above decisions now overruled by the United States Supreme Court in the *Mountain Producers Case*.

While the latter authority can in no way be held to reverse the decision of this court upon which the injunction in question is based, it does overrule the authorities and reverse the rule of law upon which that decision was grounded, so far as the taxes upon the producer's share of the oil and gas production are concerned.

Plaintiff and intervener, the Texas Company, contend that in so far as this court's original decision adjudicated the parties' rights the matter is *res adjudicata* and cannot now be modified or set aside, this court having lost jurisdiction to entertain a motion therefor.

But an injunction order does not create a right and its modification will not, therefore, amount to an unconstitutional deprivation of property without due process. (*Ladner* v. *Siegel*, 298 Pa. 487, 148 Atl. 699, 701, 68 A. L. R. 1172, annotations 1180.) That decision is a leading one on the subject and in it the supreme court of Pennsylvania clearly analyzes the present question as follows:

"There are many equitable proceedings that illustrate the general rule, such as specific performance, bills to reform instruments, and others. A final decree in such equitable proceeding is unchangeable, except possibly through gross mistake to be corrected by a bill of review, and not then if any intervening right has appeared since entering the decree. In all such proceedings the decree calls for definite action, and the law presumes such action to follow the order.

"But though a decree may be final, as it relates to an appeal and all matters included or embodied in such a step, yet, where the proceedings are of a continuing nature, it is not final. These are exceptions to the general rule, and to determine them the nature and character of the equitable action must be considered; that is, whether the decree is final for the purpose of execution, or contemplates other and further steps in the administration of justice.

"An injunction is the form of equitable proceeding which protects civil rights from irreparable injury, either by commanding acts to be done, or preventing their commission, there

being no adequate remedy at law. Granting an injunction rests in the sound discretion of the court, that discretion to be exercised under well-established principles, and there are no statutory limitations on the power of the court in relation thereto.

While the decree in such action is an adjudication of the facts and the law applicable thereto, it is none the less executory and continuing as to the purpose or object to be attained; in this it differs from other equitable actions. It operates until vacated, modified, or dissolved. An injunction contemplates either a series of continuous acts or a refraining from action. A preventive injunction constantly prevents one party from doing that which would cause irreparable damage to his neighbor's property rights. The final decree continues the life of such proceeding, not only for the purpose of execution, but for such other relief as a chancellor may in good conscience grant under the law. * * *

"The modification of a decree in a preventive injunction is inherent in the court which granted it, and may be made, (a) if, in its discretion judicially exercised, it believes the ends of justice would be served by a modification, and (b) where the law, common or statutory, has changed, been modified or extended, and (c) where there is a change in the controlling facts on which the injunction rested. * * *

"An injunction decree does not create a right; it protects · the right of the owner to the enjoyment of his property from injurious interference by the uses of other land. The right protected is an attribute of property existing through the application of common-law principles. A decree preventing its injury does not give to the complaining party a perpetual or vested right either in the remedy, the law governing the order, or the effect of it. He is not entitled to the same measure of protection at all times and under all circumstances. A decree protecting a property right is given subject to the rules governing modification, suspension, or dissolution of an injunction. The decree is an ambulatory one and marches along with time affected by the nature of the proceeding."

This rule is well established and many of the leading authorities will be found in the note in A. L. R. above referred to and in 28 Am. Jur., p. 494, section 323. Among the leading cases are *United States* v. *Swift & Co.,* 286 U. S. 106, 52 Sup. Ct. 460, 462, 76 L. Ed. 999, in which the court said that by granting a permanent injunction, "a court does not abdicate its power to revoke or modify its mandate, if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong"; *Milkwagon Drivers' Union* v. *Meadowmoor Dairies,* 312 U. S. 287, 61 Sup. Ct. 552, 557, 85 L. Ed. 836, 132 A. L. R. 1200, in which the court said: "The injunction which we sustain is 'permanent' only for the temporary period for which it may last. * * * Familiar equity procedure assures opportunity for modifying or vacating an injunction when its continuance is no longer warranted"; and *Glenn* v. *Field Packing Co.,* 290 U. S. 177, 54 Sup. Ct. 138, 78 L. Ed. 252, in which the court held that a modification is warranted by a change in the law by judicial decision. The latter point hardly requires citation of authority, for obviously it is not equitable to continue to restrain a party from actions no longer unlawful whether the change in law has come about through new legislative enactment or through an authoritative change in judicial construction by the courts. However the change may have come about, it is obviously not within the theory of a government of uniform laws conferring equal rights on all, as distinguished from a government of men conferring unequal privileges on some, that the state authorities should be further prevented from the enforcement of tax laws against this taxpayer and not against others similarly situated. This court said in *Montana Manganese Co.* v. *Ringeling,* supra: "These decisions by the Supreme Court of the United States construing a federal statute are binding upon this court, and, until modified or overruled, are conclusive of all argument upon the subject." Clearly, if one decision is binding upon the state courts when in effect, so is a later contrary decision.

Thus an adjudication that plaintiff was then entitled under the existing laws and facts to an injunction does not

amount to an adjudication that it will always be entitled to it, regardless of changing circumstances or laws, nor does it tie the hands of the equity court so as to prevent it from doing equity in the future. In other words, to say that the question may not be reopened for the purpose of determining whether the injunction should have been granted in the first instance is not to say that it may not be reopened for the determination of the question whether equity now demands that the injunction be modified, vacated, or continued further. The decision stands and constitutes an adjudication that under the facts and laws as they then existed the plaintiff was then entitled to an injunction restraining the defendant from certain acts. The reason given for the restraint, namely, that the acts restrained would constitute an improper interference with an instrumentality of the federal government, no longer applies, for the federal question has now been decided by the United States Supreme Court to the contrary. But in so determining this court is not interfering with what it granted plaintiff in 1935, relief for a time against certain acts by the defendant. In this action the court was asked to adjudicate, not that the plaintiff should be immune from taxation for 1935 and all subsequent years, but only that the defendant should then be enjoined from collecting them. The sole prayer was for the injunction, the injunction was granted, and the plaintiff has enjoyed the ensuing freedom from defendant's actions during the period since that time. But that is not to say that the plaintiff has a vested interest in the immunity for all time. While the injunction stands the defendant is enjoined from the actions; upon its annulment the defendant is no longer enjoined and may now proceed to perform all the duties imposed upon it by statute. That the equity court may for a time have enjoined the defendant from performing what would otherwise have been its statutory duty with regard to plaintiff does not mean that in spite of the change of the applicable law the court has either the duty or the right further to restrain the defendant from the performance of its duties imposed by the people and the legislature of Montana.

An injunction is merely the process by which the court enforces equity and it has not only the power but the duty to modify or annul its injunction as equity demands. A final or permanent injunction is a continuing process over which the equity court necessarily retains jurisdiction in order to do equity. And if the court of equity later finds that the law has changed or that equity no longer justifies the continuance of the injunction, it may and should free the defendant's hands from the fetters by which until then its activities have been prevented, thus leaving it free to perform its lawful duties. This court's recognition of that principle is apparent from its provision in the original decision that the defendant should be enjoined "until such time as appropriate and valid congressional consent is given to the imposition of any or all of these taxes"; and the fact that the court had in mind only one mode by which the plaintiff's right to further restraint against the defendant might be removed does not obscure its obvious and necessary intent to modify or annul the injunction when further developments should have made its continuance unjust and inequitable.

It follows from what has been said that the defendant's motion must be granted and the injunction vacated in so far as it relates to the collection of the operator's net proceeds tax and the oil producers' license tax or gross production tax, continuing the injunction only in so far as it relates to the royalty owners' net proceeds tax. Accordingly it is so ordered.

ASSOCIATE JUSTICES ANGSTMAN, ERICKSON and ANDERSON concur.

MR. JUSTICE MORRIS:

I dissent. I dissented to the original opinion, relying in part upon the rule of *res adjudicata* and further on the rule relative to the violation of the obligation of a contract. I do not contend for the application of the rule of *res adjudicata* without exceptions. I do not think the rule should be applied to shut the door in the face of justice. But the rule has its merits and should not be ignored except for cogent reasons. (*Deposit*

*Bank* v. *Frankfort*, 191 U. S. 499, 24 Sup. Ct. 154, 48 L. Ed. 276.)

On the question of violation of the obligation of a contract, I am utterly opposed to invading the rights of anyone where such rights attached under the law as construed by the courts of last resort at the time the contracts were entered into, irrespective of whether such rights are brought in question between individual litigants or between individuals and a department of the state or federal government. When the Santa Rita Company entered into the contract to exploit the Indian lands, such contract being approved by the Interior Department of the federal government, and the status of the company in the matter of taxing the proceeds derived from the products produced from the Indian Lands was fixed by the interpretation placed upon the applicable statutes and regulations then existing, such interpretation being made by the United States Supreme Court should be final as to contracts thus existing. When that court subsequently changed its views as to the law, and an attempt is made to revise the obligation of parties to a contract entered into prior to the time the court gave expression to its changed views as to the law, it is repugnant to natural justice to give the court's new interpretation retroactive effect. We have heretofore so held in substance in the following cases: *Montana Horse Products Co.* v. *Great Northern Ry. Co.*, 91 Mont. 194, 7 Pac. (2d) 919; *Continental Supply Co.* v. *Abell*, 95 Mont. 148, 24 Pac. (2d) 133; *State* v. *Simanton*, 100 Mont. 292, 49 Pac. (2d) 981; see, also, *Judith Basin Irrigation District* v. *Malott*, (9 Cir.) 73 Fed. (2d) 142, 97 A. L. R. 504.