**NATIONAL ELECTRIC SERVICE COR-
PORATION, Appellant,**

v.

**DISTRICT 50, UNITED MINE WORKERS
OF AMERICA, et al., Appellees.**

Court of Appeals of Kentucky.

May 20, 1955.

James S. Greene, Jr., Harlan, for appel-
lant.

Lay & Knuckles, Pineville, for appellees.

MOREMEN, Judge.

This appeal concerns the right of a trial
court to set aside a judgment granting a
permanent injunction, upon motion, after
almost a year had elapsed since its entry.

On December 29, 1952, National Electric
Service Corporation filed its petition seeking
temporary and permanent injunctions
against appellees, District 50 United Mine
Workers of America and others, enjoining
them from picketing the plant of appellant
and from interfering with appellant's busi-
ness by means of threat and intimidation,
and from attempting to coerce its employees
to designate appellee as their bargaining
representative contrary to the provisions of
KRS 336.130.

Appellees filed a pleading styled "Special Demurrer and Plea to Jurisdiction" in which they questioned the court's authority to try the case upon the grounds that the petition presented a case of unfair labor practice denounced by the Labor Management Relations Act of 1947, 29 U.S.C.A. §§ 141–197, and as such was within exclusive jurisdiction of the National Labor Relations Board. Upon submission this plea was overruled. Thereafter, upon hearing, the court granted a temporary injunction which appellees moved to dissolve in this court. We overruled the motion.

Upon return to the trial court and after evidence had been presented, the court entered judgment on April 28, 1953, which made the temporary injunction permanent.

On December 14, 1953, the Supreme Court of the United States handed down a decision in Garner v. Teamsters, Chauffeurs & Helpers Local Union, 346 U.S. 485, 74 S.Ct. 161, 167, 98 L.Ed. 228, which held that a state may not enjoin, under its own labor statute, conduct which had been made an "unfair labor practice" under the federal statutes and this opinion supported appellees' original contention that the National Labor Relations Board had exclusive jurisdiction of an action such as was brought by appellant in this case.

Both parties in their briefs conceded that under the law of the Garner case the trial court and this court had been in error in holding that the state court had jurisdiction of the subject matter of appellant's complaint.

On April 8, 1954, appellees, under CR 60.02(4), moved to set aside the judgment granting permanent injunction on the ground that the judgment was void. The trial court sustained this motion and entered a new judgment by which the injunction was denied.

Appellee has interpreted the Garner case as being conclusive of the question of whether the original judgment in this case was void, and appellant has conceded "the trial court was in error in holding that it had jurisdiction of the subject matter of appellant's complaint."

In the Garner case a lower equity court of the State of Pennsylvania had issued an injunction to prohibit picketing by a union in order to coerce petitioners into compelling or influencing their employees to join a union. A decision of the Supreme Court of Pennsylvania deprived petitioners of the injunction which decision was affirmed by the Supreme Court of the United States on the ground that petitioner's grievance was within the jurisdiction of the National Labor Relations Board to prevent unfair labor practices under the Labor Management Relations Act and was not subject to relief by injunction in the state court. However, in the opinion it was indicated that the court did not intend to deprive the state courts of jurisdiction in every case where there was a dispute between employers and employees who were engaged in interstate commerce because there it was said:

"This is not an instance of injurious conduct which the National Labor Relations Board is without express power to prevent and which therefore either is 'governable by the state or it is entirely ungoverned.' In such cases we have declined to find an implied exclusion of state powers. International Union v. Wisconsin Employment Relations Board, 336 U.S. 245, 254, 69 S.Ct. 516, 521, 93 L.Ed. 651. Nor is this a case of mass picketing, threatening of employees, obstructing streets and highways, or picketing homes. We have held that the state still may exercise 'its historic powers over such traditionally local matters as public safety and order and the use of streets and highways.' Allen-Bradley Local v. Wisconsin Employment Relations Board, 315 U.S. 740, 749, 62 S.Ct. 820, 825, 86 L.Ed. 1154."

In the more recent cases: Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 1955, 348 U.S. 437, 75 S.Ct. 488, 99 L.Ed. ——; Weber v.

Anheuser-Busch, Inc., 1955, 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. ——; and Amalgamated Clothing Workers of America v. Richman Bros., 1955, 348 U.S. 511, 75 S.Ct. 452, the Supreme Court again directed its attention to determining the extent the labor relations of those involved in interstate commerce are still subject to regulatory powers of the states.

In the Westinghouse case the question was whether, under section 301 of the Labor Management Relations Act—which provides that suits for violation of contracts between employer and a labor organization representing employees in an industry affecting interstate commerce, may be brought in any federal district court without respect to the amount in controversy or diversity of citizenship—the district court had jurisdiction over an action brought by the union on behalf of the employees for wages which the employer refused to pay in violation of a collective bargaining agreement. Six members of the court held that section 301 did not confer jurisdiction over such a suit in the federal courts. They did not agree upon an opinion in support of the decision. We gather from the symposium that, as a matter of simple statutory construction, section 301 was not intended to authorize a union to enforce in federal court an employee's right to compensation because the complaint set up no violation of a *collective* labor contract, but only a violation of *individual* employment contracts.

In the Weber case, the employer filed a charge of unfair labor practice against the union under the Labor Management Relations Act. The National Labor Relations Board held that the terms of the act had not been violated. Afterwards the employer obtained a permanent injunction in a Missouri state court which was affirmed by the Missouri Supreme Court on the ground that the union's conduct constituted a violation of the state's Restraint of Trade statute. The U. S. Supreme Court held that the state court's jurisdiction to enjoin the union's conduct was preempted by the authority vested in a federal board by the Labor Management Relations Act. In the course of the opinion by Justice Frankfurter, this statement was made [348 U.S. 468, 75 S.Ct. 487]:

"But as the opinion in that case recalled, the Labor Management Relations Act 'leaves much to the states, though Congress has refrained from telling us how much.' 346 U.S., at page 488, 74 S.Ct. [161] at page 164 [98 L.Ed. 228]. This penumbral area can be rendered progressively clear only by the course of litigation."

In the Richman Brothers Case, an employer engaged in interstate commerce filed suit in a state court for injunctions against a labor union responsible for peaceful picketing, presumably to compel its employees to join the union. After the state court had denied the union's motion to dismiss on the ground that the National Labor Relations Board had exclusive jurisdiction of the matter, the union sought an injunction in the federal district court requiring the employer to withdraw the suit commenced in the state court. In fulfillment of the promise to make progressively clear the application of the law of the Garner case, it was held in the majority opinion that the district court was without power to issue the injunction. The import of the opinion is that even if on final appeal of the whole case from the state court, the United States Supreme Court should be compelled to reverse the judgment of the state court, still the federal courts are powerless to interfere until that time arrives. This fact was pointed out by Justice Douglas in a dissenting opinion by these words [348 U.S. 511, 75 S.Ct. 460]:

"Under the present decision, an employer can move in the state courts for an injunction against the strike. The injunction, if granted, may for all practical purposes settle the matter. There is no way for the union to transfer the dispute to the federal Board, for it seems to be assumed by both parties that the employer has committed no unfair labor practice. By today's decision the federal court is powerless to enjoin the state action. The case lingers on in the state court. There

can be no appeal to this Court from the temporary injunction. Montgomery Building & Construction Union v. Ledbetter Co., 344 U.S. 178, 73 S.Ct. 196, 97 L.Ed. 204. It may take substantial time in the trial court to prepare a record to support a permanent injunction. Once one is granted, the long, drawn-out appeal through the state hierarchy and on to this Court commences. Yet by the time this Court decides that from the very beginning the state court had no jurisdiction, as it must under the principle of Garner v. Teamsters Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228, a year or more has passed; and time alone has probably defeated the claim."

In any event, all the opinions treat the Garner case as being conclusive evidence of the ultimate law of the country and, as it is such, the circuit court judge was charged with the duty to apply the current law of the country, as announced by the U. S. Supreme Court, if procedural limitations permitted him so to do.

When we return to the facts of the instant case, we find ourselves, to a certain extent, drifting in an uncharted portion of the "penumbral area" because here the mandatory part of the injunction reads as follows:

" * * * be and they are jointly and severally enjoined from picketing the plant of the plaintiff, National Electric Service Corporation, from interfering with plaintiff's business, from threatening, intimidating or abusing any of the employees of the plaintiff and from threatening or intimidating any other persons attempting to gain admission to the plant of plaintiff; to which ruling of the Court the defendants object and except."

In an opinion filed at the time it set aside the judgment granting the injunction, the court explained that it had been issued because the picketing had for its purpose the accomplishment of an unlawful object, namely: the coercion of the employer to compel its eligible employees to become members of the union. Nevertheless the stubborn fact remains that the judgment itself also prohibited the union from threatening, intimidating, or abusing any of the employees of the company and from threatening or intimidating any other person attempting to gain admission to the plant and, therefore, the injunction was of a dual nature. One part of it improperly issued (under the Garner Case)—the other portion well within the jurisdiction of the court. International Union v. Wisconsin Employment Relations Board, 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651; Allen-Bradley Local v. Wisconsin Employment Relations Board, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154.

With these principles and facts in mind, we must return to the primary question on this appeal, which is: Did the court, after a year had elapsed—but within a reasonable time after the decision in the Garner case—have the power under our Civil Rules to set aside the original judgment granting the injunction? The applicable rule, 60.02, reads:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason of an extraordinary nature justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, or-

der,. or proceeding was entered or taken."

. In the briefs appellee contends that the judgment was void and therefore under subsection 4. may be set aside at any time. Appellant contends, inter alia, the court had jurisdiction to pass upon the question of whether he had the right to issue the judgment and, having done so, the ·judgment is not void.

However, as we hope our rather long discussion .of the question has demonstrated, neither of these contentions is an acceptable basis ·for a decision here and we must look again to CR 60.02 to determine if the court had the right to set aside its earlier judgment. We think he did· have that right for two reasons: First, because subsection 5 of the above quoted rule permits such action when subsequent events justify relief from the operation of the judgment. Of this subsection, in Clay CR, page 534 it is said:

> "This ground had no counterpart in the Civil Code. However, it was substantially the basis of the ancient writ of audita querela. That writ and this ground are founded upon the right to relief when one is adversely affected by a judgment because of some defense, or discharge, or other circumstance arising subsequent to its entry.
>
> "Relief from the judgment may. not only be granted if it has been. satisfied, released or discharged, but also if a prior judgment upon which it is. based has been reversed or otherwise vacated, or if it would be inequitable to give it further prospective application."

The· opinion in the Garner case which established law that had not been applicable in this Commonwealth prior to its decision, was ·certainly a circumstance arising subsequent to the entry of the judgment which warranted relief and we further believe ·it would be inequitable to give further prospective· application to a principle of law which is no longer evidenced by the opinions of the state courts or the courts of the United States.

Secondly, in addition to the authority of the above subsections of CR 60.02, the trial court may well have acted under an established principle governing injunctions. An injunction, whether permanent or temporary, is an equitable process that results only from the extraordinary powers of the chancellor and it is a continuing process over which the equity court necessarily retains jurisdiction in order to do equity. This includes power to modify or vacate it, if the law has changed or present considerations' of equity demand it. See Santa Rita Oil Co. v. State Board of Equalization, 112 Mont.· 359, 116 P.2d 1012, 136 A.L.R. 757; and the cases assembled in annotation in 136 A.L.R. 765. United States v. Swift, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999; Ladner v. Siegel, 298 Pa. 487, 148 A. 699, 68 A.L.R. 1172.

The injunction, as such, serves to protect the status quo in respect to property rights under existing law and facts. Kelley v. Earle, 325 Pa. 337, 190 A. 140. A change in either serves as sufficient ground for modification or vacation of the original judgment —not by reason of the void or voidable aspect of the original decree—but through the chancellor's. inherent power to correct that which it is no longer equitable to enforce.

In the case at bar, the trial court stated in its opinion the injunction was issued on the sole ground that the picketing had the unlawful purpose of coercing the employer to compel its eligible employees to become members of the union. The Garner case removed the power to use an injunction based on that ground. The chancellor, in exercise of his inherent power, was well within his right and duty in setting aside the injunction because of the subsequent change in law.

Judgment affirmed.

HOGG, J., not sitting.