R. H. HOBBS COMPANY, a Corporation, Appellant,

v.

Edward CHRISTIAN et al., Appellee.

Court of Appeals of Kentucky.

June 19, 1959.

E. N. Venters, Pikeville, Combs & Combs, Prestonsburg, for appellant.

Dan Jack Combs, Fred B. Redwine, Pikeville, for appellee.

MOREMEN, Judge.

This case presents again the right to picket peacefully.

Appellant, R. H. Hobbs Company, is a corporation which operates a chain of variety stores. The stores are located at Pikeville, Prestonsburg and Paintsville in Kentucky, and at Williamson, West Virginia. Here we are concerned with appellant's Prestonsburg operation where it has ten employees, one of whom is the wife of the store manager. Appellee Christian is a representative for the Retail Clerks International Association, a labor union affiliated with American Federation of Labor—Congress of Industrial Organizations.

In August of 1957, Christian, on behalf of the union, began an organizational campaign among the employees of the stores belonging to appellant. He recruited a majority of the employees in each store for membership in the union. At the Prestonsburg store eight of the employees signed up. Each member signed an authorization for representation, and here is a specimen card:

"Retail Clerks International Association
(Affiliated with A.F.L.–C.I.O.),

"Authorization for Representation

　　　　　　　"Desiring to enjoy the rights and benefits of collective bargaining undersigned, employee of the R. H. Hobbs employed as ___ Candy Clerk ___ Dept. 4
　　　(Job Title)
Address ___ Prestonsburg ___ , Ky. ___ Phone ___
Hereby authorize Retail Clerks International Association, A.F.L.–C.I.O. or its chartered Local Union to represent me for the purposes of collective bargaining, respecting rates of pay, wages, hours of employment, in accordance with applicable law.

9/8/57 　　　　　　Mary Lou Burchett 　　　　　　　"
Date 　　　　　　(Signature of Employee)

Thereafter Christian, on behalf of the union, by letter and otherwise, repeatedly requested appellant to recognize the Retail Clerks International Association as bargaining agent for the employees. Appellant refused.

At meetings of the employees, during and subsequent to the attempts made to obtain recognition, Christian was authorized, as agent of the union and of the employees, to call a strike or to establish a picket line without calling a strike in his discretion if

appellant persisted in refusing recognition. Appellant persisted.

A picket line was established, but no strike was declared and the employees continued to work. Appellant sought an injunction and, upon final hearing, the circuit court found:

"1. No unlawful picketing was being engaged in by the defendants.

"2. A majority of the employees of the plaintiff had desired membership in the Retail Clerks International Association AFL–CIO.

"3. The employees were placed under fear by the plaintiff's representatives. ·

"4. There is a bona fide labor dispute existing between the plaintiff and its employees."

And declined to issue an injunction.

The finding of the court embodied in the third item above resulted from an issue which developed at the trial concerning whether some of the employees had retracted the authorization previously given to the union.

While appellant did not set forth a table of points relied upon as required by subsection (a) of RCA 1.210, we gather from the brief that appellant contends principally that under KRS 336.130, peaceful picketing is unlawful unless the actual picket line is established and maintained by employees alone.

Before we discuss the main issue, it is well to remember that the Supreme Court of the United States has been required in many opinions to define the rights and powers which were given to the federal government or retained by the states. In this connection, it is doubtful whether any subject, in recent years, has been more troublesome than that presented by the labor and management relationship, as is evidenced by the great number of opinions on this subject. We must also recognize that no classification of these opinions may be made on the theory that local and intrastate business is to be governed by the law of that state, while interstate business is controlled by federal law. That distinction is not possible since the adoption of the Fourteenth Amendment to the Constitution of the United States which secured to all persons certain fundamental rights of liberty.

One of the first cases predicated upon the idea that peaceful picketing for the purpose of distributing information was within the area of free discussion guaranteed by the First Amendment against abridgement by the United States and extended to all persons by the force of the Fourteenth Amendment against abridgement by the various states, was Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L. Ed. 1093. There, by express statute, picketing was forbidden and made a criminal offense. Thornhill was convicted under the statute which on two previous occasions had been held to be constitutional by the Court of Alabama. Consideration by the Supreme Court of the United States resulted in the holding above set forth. Thereafter, in the celebrated case of A.F. of L. v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855, the doctrine of free speech reached full flower and it was held that peaceful picketing could not be enjoined' even though it was carried on in the absence of a labor dispute. The opinion seemed to indicate that only acts of extreme violence might be enjoined by the state courts.

Soon thereafter, however, in Bakery and Pastry Drivers and Helpers Local Union 802 of International Brotherhood of Teamsters v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed 1178, the court recognized that picketing might include elements other than free speech and said: "A state is not required to tolerate in all places and all circumstances even peaceful picketing by an individual."

In Giboney v. Empire Storage & Ice Company, 336 U.S. 490, 69 S.Ct. 684, 93 L. Ed. 834, the court concluded that the con-

stitutional right of free speech does not extend its immunity to speech used as an integral part of conduct in violation of a valid criminal statute and then followed with the opinion in the case of International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local 309 v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995 in which it was announced that picketing properly could be prohibited if a state court decided that picketing was for an unlawful purpose. But the opinion made it plain that a state or its courts would not be permitted to set up artificial or unreal standards of propriety and, by a legislative or judicial fiat, enforce them in order to deny a right to picket.

The cases of Building Service Employees Intern. Union, Local 262 v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 555; Hughes v. Superior Court, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985; and Local Union No. 10, United Ass'n of Journeymen Plumbers and Steamfitters of United States and Canada of American Federation of Labor v. Graham, 345 U.S. 192, 73 S.Ct. 585, 97 L.Ed. 946, also indicate that the Supreme Court has developed grave doubts about the strength of its logic in the Thornhill case. But complete retraction came, we believe, in International Brotherhood of Teamsters, Local 695, A.F.L. v. Vogt, Inc., 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347; 354 U.S. 945, 77 S.Ct. 1423, 1 L.Ed.2d 1558, where a state court's conclusion that the picketing of an intrastate business by a union for the purpose of coercing an employer to put pressure on his employees to join the union was unlawful, was held by the Supreme Court to have had a rational basis and to be a matter which addressed itself to the state's decision. The opinion indicates that so long as state policies are rational it may balance the social interests between employers and unions. We interpret this opinion to mean that the Supreme Court will no longer overrule state statutes or the determination of state public policy by the courts if either is based upon sound reason.

In the meantime, this court attempted to follow the Supreme Court through the various changes and that cycle is thoroughly discussed in Blue Boar Cafeteria Co. v. Hotel and Restaurant Employees, etc., Ky., 254 S.W.2d 335, where we reached the same conclusion that was later reached in the Vogt case. We determined that under the facts of that case this court had the right to set the public policy of the state. Since appellant in this case apparently relies upon that case as authority for the reversal of the lower court, it is necessary to give a short statement of facts.

The Blue Boar Restaurant employed about 270 people. A Union attempted to organize it. Negotiations by representatives of the Union with those of the restaurant began with the demand that the Union be recognized so that it could bargain with the restaurant on behalf of its employees. The restaurant refused and a business agent of the union called a meeting of the Blue Boar employees. Only five of the employees went to the meeting and none of them joined the union. Later picket lines were established around the restaurant by persons who were not employees of Blue Boar. They passed out literature and carried signs by which the public was asked not to patronize the restaurant. The circuit court granted a temporary injunction on the ground that there was no controversy between Blue Boar and its employees and that the pickets were all non-employees.

Upon appeal, this court did not discuss the question of picketing by a stranger union for organizational purposes although inherent in the opinion may be found the thought that unless the union in fact represents some of the employees, it has no right to picket. The opinion was based solely upon the ground that the peaceful picketing involved was not for the sole purpose of disseminating information, but was a device directed to coercing the employer to compel its employees to join the union. This practice was illegal under KRS 336.130.

We think the facts of the instant case are more nearly like those presented in Broadway & Fourth Avenue Realty Company v. Local No. 181, Ky., 244 S.W.2d 746, where the record showed that the union had been empowered by the employees to represent them in dealing with the employer. It was held that picketing by the union was proper and for a lawful purpose. There, as here, the union had requested the employer to recognize it as the bargaining agent of the employees.

Since appellant in this case contends that KRS 336.130 provides that the employees must be on strike and the picket line staffed only by employees in order to be legitimate, it is best that we quote this statute:

"(1) Employes may, free from restraint or coercion by the employers or their agents, associate collectively for self-organization and designate collectively representatives of their own choosing to negotiate the terms and conditions of their employment to effectively promote their own rights and general welfare. Employes, collectively and individually, may strike, engage in peaceful picketing, and assemble collectively for peaceful purposes.

"(2) Neither employers or their agents nor employes or associations, organizations or groups of employes shall engage or be permitted to engage in unfair or illegal acts or practices or resort to violence, intimidation, threats or coercion."

■ We interpret the foregoing sections to mean that employees are not only given certain definite rights but may also designate collectively representatives to promote those rights and their general welfare. In other words, anything that is proper for them to do individually, may be done either collectively or by their properly designated agent. Section 780, Volume 4 of "Restatement of the Law of Torts" reads:

"A labor union or any person acting at the invitation of the workers and on their behalf may exercise for them their privileges of concerted action."

In the comment to the section, it is pointed out that this rule is merely an application of the general principle that what one may do himself, he may do through an agent and that an agent acting within the scope of his authority partakes of the privileges of his principal. We agree.

In summary, we wish to state that the Blue Boar case presented a true situation of picketing by strangers and there was no labor dispute or a picket line established by the representatives of the workers.

■ We believe, therefore, that the lower court reached a proper decision under Kentucky law and under the public policy of this state, if the factual situation was such that permitted the courts of this state to assume jurisdiction.

This case has been considered with a companion case (Christian v. R. H. Hobbs Company, Ky., 325 S.W.2d 335), in an appeal from the Pike Circuit Court where the trial court reached a decision just converse to the one reached by the Floyd Circuit Court. There an injunction was issued on the theory that the picketing of appellant's Pikeville store was "stranger picketing." This doubt, however, was expressed as to jurisdiction:

"The court is further of the opinion that this case should have been in the federal court rather than the state court inasmuch as R. H. Hobbs Company has a store known to the court in West Virginia which, as this court believes, brings the R. H. Hobbs Company under interstate laws, rather than intrastate."

■ In the case at bar, the jurisdictional question was presented in this manner: Appellees tendered an amended answer and averred that R. H. Hobbs Company operated a chain of stores, at least one of which was located in West Virginia and several in Kentucky, and exported goods in excess of $50,000 per year from Kentucky and imported merchandise in excess of $500,000. By these allegations, the appellee questioned the court's jurisdiction

on the ground that it had been preempted by the jurisdiction of the N.L.R.B. under the National Labor Relations Act of 1947, 29 U.S.C.A. §§ 141–159. See: National Electric Service Corp. v. District 50, Etc., Ky., 279 S.W.2d 808, and Garner v. Teamsters, Etc., 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228. Appellant resisted the filing of this amended answer on the ground that under N.L.R.B.'s regulations the Board would assert jurisdiction over a case involving a retail chain store operating in two or more states only when the following standards are met:

"Chain Test—Gross yearly sales from all stores or establishments in chain of $10,000,000.00

"Single Store Test—$1,000,000.00 direct or $2,000,000.00 indirect purchases a year from outside the state or $100,000.00 shipments a year to other states by the store involved."

The amounts averred in the amended answer were such that under its regulations N.L.R.B. would refuse to take jurisdiction of the subject matter. Appellant argues that the trial court properly took jurisdiction because if it had not, we would be presented with a situation where a controversy existed and the parties would be free from control of any board, court or judicial body.

The question as to areas in which the states were free to operate after the passage of the Labor Management Relations Act was discussed at length in National Electric Service Corporation v. District 50, Etc., Ky., 279 S.W.2d 808, 810 and we submissively accepted the Supreme Court's statement that "this penumbral area can be rendered progressively clear only by the course of litigation."

Heretofore, we have been concerned only in determining the extent the labor relations of those involved in interstate commerce are still subject to regulatory powers of the state. Now, we must decide whether the state courts are free to operate within those areas in which the N.L.R.B. inherently has jurisdiction, but has voluntarily withdrawn and now refuses to act. There has existed until recently a diversity of opinion among the various courts on this question. See: American Bar Ass'n Journal, Vol. 42, page 415.

It appears, however, that the Supreme Court has spoken decisively on this question. In Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 603, 1 L.Ed. 2d 601, these facts were presented: Appellant manufactured specialized photographic equipment in Salt Lake City, Utah. He purchased materials from outside Utah in an amount less than $50,000. The union accused the employer of unfair labor practices and a charge was filed before the N.L.R.B. The Board declined to act on the ground that the operations of the company were predominantly local in character.

The Supreme Court held that appellant's business affected commerce within the meaning of the National Labor Relations Act and that the N.L.R.B. had jurisdiction. It was stated that unless the Board had ceded jurisdiction, under Section 10(a) of the Act, to the proper state agencies having jurisdiction over the matter, that the state agencies (and it follows—the courts) had no jurisdiction.

In answer to the cogent charge that such a ruling would create a twilight zone within which no court could see to operate, the Supreme Court said this:

"We are told by appellee that to deny the state jurisdiction here will create a vast no-man's-land, subject to regulation by no agency or court. We are told by appellant that to grant jurisdiction would produce confusion and conflicts with federal policy. Unfortunately, both may be right. We believe, however, that Congress has expressed (353 U.S. 11, 77 S.Ct. 598) its judgment in favor of uniformity. Since Congress' power in the area of commerce among the States is plenary, its judgment must be respected whatever policy objections there may be to creation of a no-man's-land. Congress is free to change the situation at will. In 1954, the Senate Committee on

Labor and Public Welfare recognized the existence of a no-man's-land and proposed an amendment which would have empowered state courts and agencies to act upon the National Board's declination of jurisdiction. The National Labor Relations Board can greatly reduce the area of the no-man's-land by reasserting its jurisdiction and, where States have brought their labor laws into conformity with federal policy, by ceding jurisdiction under § 10 (a)."

We have no alternative, therefore, except to follow the Court's decision and hold that although the trial court in this case was correct in refusing to issue an injunction under our state law, still it had no jurisdiction to act at all.

Judgment reversed.