**BROADWAY & FOURTH AVE. REALTY CO. v. LOCAL NO. 181, HOTEL AND RESTAURANT EMPLOYEES UNION et. al.**

Court of Appeals of Kentucky.

Dec. 21, 1951.

Chas. I. Dawson, Thos. S. Dawson, Richard M. Dawson and Bullitt, Dawson & Tarrant, all of Louisville, for appellant.

Leon J. Shaikun, Herbert L. Segal, Louisville, for appellees.

STEWART, Justice.

This appeal is from a final order of the Jefferson Circuit Court, Chancery Branch, Second Division, overruling a motion and amended motion of Broadway & Fourth Avenue Realty Company to vacate so much of a prior judgment rendered by it that allowed peaceful picketing at or around the Martin Brown Building and to adjudge in lieu thereof that all picketing be prohibited at that building in the future. To reverse the ruling below, appellant contends: (1) That picketing around the Martin Brown Building is illegal because its purpose has been and is now to compel appellant to coerce its employees in the selection of their bargaining representatives in violation of KRS 336.130; and (2) that the evidence shows that the strike and the picketing around the Martin Brown Building have wholly failed in their purpose and appellant is entitled to have further picketing enjoined.

On March 22, 1951, E. G. Bartlett and William E. Fredenberger, business agents, respectively, of Local No. 181, Hotel and Restaurant Employees Union, and of Local No. 320, International Brotherhood of Firemen & Oilers, wrote a letter to J. Graham Brown, owner of virtually all of the capital stock of the Brown Hotel Company which in turn owns the Brown and Kentucky Hotels in Louisville, formally requesting that he recognize these unions as the exclusive bargaining agency of the employees of the Brown and Kentucky Hotels. The record shows that these two men were also clothed with authority to bargain with the two hotels in behalf of Local No. 79, Bartenders International Union, but this union is not involved here. Upon Brown's refusal to accede to the demand of the unions, Bartlett and Fredenberger called a strike on March 29, 1951, at the two hotels, and from 300 to 400 of the employees at both hotels went out on a strike. The two hotels employ from 800 to 1000 people, the number varying with the seasonal demand. The unions established a picket line of a great number of ex-employees around the Brown and Kentucky Hotels, around the Brown Building and in the alley upon which the service entrance of the Martin Brown Building opens.

The Martin Brown Building, located at Fourth Avenue and Broadway and across Fourth Avenue from the Brown Hotel, is owned by appellant, Broadway & Fourth Avenue Realty Company, and the latter is a separate corporation from the corporation that owns the Brown and Kentucky

Hotels. All of the capital stock of appellant is owned by another corporation, and Brown owns all but the qualifying shares of the capital stock of the last-mentioned corporation.

On March 30, 1951, a temporary restraining order issued from the circuit court enjoining the unions from maintaining more than two pickets at each entrance of the Brown and Kentucky Hotels and completely forbidding the unions from picketing around the Brown Building or the Martin Brown Building. On April 2, 1951, Bartlett and Fredenberger wrote to Brown claiming, for the first time, that their unions represented the employees of the Brown Building and the Martin Brown Building and requested that he recognize the two unions as the bargaining agency of these employees. On April 5, 1951, the trial court, after a hearing upon notice to dissolve the temporary restraining order, adjudged a labor dispute to exist between the Brown and Kentucky Hotels and their employees and also between the Brown Building and the Martin Brown Building and their employees; allowed two pickets with a captain at the entrances of each hotel and in the alley at the service entrance of the Martin Brown Building; and, in addition, permitted two pickets with a captain at the main entrance of the latter building from six in the evening to eight the next morning.

At the time the strike was called 14 or 15 employees were working at the Martin Brown Building and ten of these walked out. The vacancies of those striking were filled promptly, and Brown and Harold E. Harter, the manager of the Martin Brown Building, stated in their depositions that no employee who went out on strike would be re-employed. On June 8, 1951, seventeen employees of the Martin Brown Building, being all of those at the time employed, signed a statement to the effect that neither collectively nor individually had they designated appellees or Local No. 79, Bartenders' International Union, nor any of the agents or parent organizations of these unions, as their bargaining agents to represent them with appellant as to wages or working conditions. The statement further recited in

substance that the employees had no dispute with their employer; that the picketing of the Martin Brown Building was done without their consent or approval; and that they wanted the pickets removed. This statement was prepared by the attorney for Brown and appellant. The employees were called to the office of their manager, Harter, who requested them to sign it. Harter in his deposition said that he read the statement to the employees, that he then explained to them they were under no compulsion to sign it, and that they signed it voluntarily.

■ At the outset we may state that we agree with appellant's argument that an act by an employer which would be a crime or a violation of a legislative enactment or contrary to a defined public policy is not a proper object of concerted action against him by workers. This rule is in accord with KRS 336.130. In addition, this principle of law is the very basis of the recent Supreme Court decisions which appellant vigorously insists are applicable here, these cases being Building Service Employees International Union v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 1045; International Brotherhood of Teamsters, C., W. & H. Union v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995; Hughes v. Superior Court of California, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985; and Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834.

Therefore, if the object of the strike in controversy is an act against which the law has definitely set its face, it is not a proper object of concerted action. In this connection, appellant contends that a letter dated April 2, 1951, addressed to Brown, is a demand that he coerce the employees at the Martin Brown Building to join appellee unions, the language of the letter being:

"Dear Mr. Brown:

"This is to advise that inasmuch as we represent the employees of the Martin-Brown and Brown Buildings which are operated by the Broadway and Fourth Avenue Realty Company, we respectfully request that you recognize the Hotel and Restaurant Workers International Union, Local #181, and the International Brother-

hood of Firemen and Oilers, Local #320, as the bargaining agency for all employees except those in a supervisory or clerical capacity.

"Yours very truly,
/s/ "Wm. E. Fredenberger
/s/ "E. G. Bartlett"

We do not gather from this communication that Brown is himself expected to force his employees to join appellee unions. The letter is nothing more than a request that Brown recognize appellees as the bargaining agency for his employees at the Martin Brown Building, since these unions already represented certain employees at the building who had struck. Moreover, the evidence of those who wrote the letter sheds light on its objective. For instance, Bartlett in his deposition gave the following reason for asking Brown to recognize the unions: "We represent the employees that were working there at the time of the strike, who came out on strike." Fredenberger, testifying on this point, said: "If we obtain recognition, which we will, we will then negotiate with the employees. How many of those people will remain in the building, I don't know. Those who do remain, we would then be bargaining for them as well as the people who are out on strike."

■ But, taking the letter at its face value, does it ask Brown to do an unlawful act? We believe the answer to this question is supplied by this language from the Restatement of the Law on Torts, Vol. 4, Sec. 785, p. 125:

"On the employees' side collective bargaining must ordinarily be carried on by an agency representing them. Before collective bargaining can proceed, the employer must ordinarly recognize an agency as representing the employees. A labor union is such an agency; and a demand for recognition by the employer of the union as the regular agency for collective bargaining on behalf of his employees is frequently the object of their concerted action. * * * This object is proper though the union includes more than the employees of the employer and though the individuals acting as representatives of the union and of the employees are not employees of the employer at all. Likewise, in the absence of applicable legislation to the contrary, this object is proper though only a minority of the employer's employees are members of the union or engage in the concerted action."

The genesis of the strike at the Martin Brown Building, as we have noted, was the refusal of appellant to recognize appellees as the bargaining agency of its employees. Ten of the then fourteen or fifteen employees of appellant struck in protest against this action of their employer. Subsequent events that have transpired, such as filling the gaps with other workers and the signing of a statement to the effect that the present employees have no dispute with their employer, do not eliminate the fact that a labor dispute has been created and still subsists. More than that, the judgment of April 5, 1951, rendered in a proceeding in which these same litigants were parties, adjudicated that a separate and distinct labor controversy existed at the Martin Brown Building, as shown by this extract therefrom: "Upon the termination of the labor dispute now existing between the Broadway & Fourth Avenue Realty Company and its employees in and at said building, the pickets and captain of pickets herein authorized to be maintained in the vicinity of said building shall be promptly withdrawn."

■ From our consideration of all the evidence in the case at bar we believe the strike has for its purpose the accomplishment of a lawful object. It is admitted that peaceful picketing which is used properly as an instrument of publicity has been held by the Supreme Court to be protected by the Fourteenth Amendment of the federal Constitution. See Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; Carlson v. People of State of California, 310 U.S. 106, 60 S.Ct. 746, 84 L.Ed. 1104; and Cafeteria Employees Union Local 302 v. Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58. There is lengthy reference in appellant's brief to certain lawless acts of violence resorted to, from time to time, by alleged members of the herein unions to intimidate and interfere with employees at the

750

two hotels and at the Martin Brown Building. This issue is not germane to this controversy, since this phase of the strike has been dealt with separately in a contempt proceeding which is still under the control of the circuit court.

 Nor do we think there is merit to appellant's assertion that the strike at the Martin Brown Building has failed in its purpose and, since there is no prospect of its future success, as is claimed, it should be enjoined. In support of this contention the employer argues that when certain of its employees went out on strike their places were filled with others and have been kept filled ever since; therefore, it concludes that neither the strike nor the picketing has interfered, nor can interfere, with appellant's business at the Martin Brown Building. This line of reasoning is specious. If this Court were to uphold appellant's theory of terminating a labor controversy it would be useless to call a strike in any case, because an employer could defeat it by replacing the vacancies created by those who walked out. We are of the opinion that this Court should not go on record as upholding this method of "breaking" a strike.

Wherefore, the judgment is affirmed.