R. L. CANTRELL, d/b/a Roadside Markets, Appellant,

v.

FOOD STORE EMPLOYEES' UNION, LOCAL 347, AFL–CIO, et al., Appellees.

Court of Appeals of Kentucky.

Oct. 25, 1957.

Rehearing Denied Feb. 21, 1958.

**336**

Creech & Cox, Ashland, for appellant.

P. H. Vincent, Ashland, for appellees.

STEWART, Judge.

This is an appeal by R. L. Cantrell from a judgment denying him an injunction against picketing. It was stipulated appellant is not engaged in interstate commerce and that the issues involved in this case are to be determined by the law of this state. In the course of this opinion, we shall deal with what we consider are the pertinent contentions advanced for reversal.

Appellant, a small independent grocer, operates two markets in Ashland, one at 2411 Thirteenth Street and another at 3830 Winchester Avenue. Prior to April 14, 1956, appellee, Food Store Employees' Union, Local 347, AFL-CIO, embarked upon a program to unionize appellant's employees. Robert Moyer, the business agent of the local, obtained the names of appellant's employees and began contacting them with the aim of securing them as members. Some refused to join, but nine of the employees took out cards with the union.

It was then determined a majority of appellant's employees eligible to unite with the union had selected Local 347 as the bargaining agent of the group at a meeting at which five members showed up. Meanwhile, one of appellant's employees, Gertrude Shockey, who had become associated with the union, quit her job, according to the weight of the evidence, although she asserted she was fired for union activity. The night of the day this occurred three of appellant's employees who had joined the union, together with Moyer, met at the Shockey residence and voted to strike. Moyer, however, persuaded them not to take this step until he had an opportunity to present their grievances to appellant.

On the morning of April 13, 1956, Moyer called appellant on the telephone and told him he represented appellant's employees who had joined the union, requested a meeting to discuss recognition of the union as the bargaining agency of these employees, and asked for the immediate restoration of Gertrude Shockey to her job. Moyer was directed by appellant to take up these mat-

ters with his attorney, but Moyer instead got in touch with his superior, Sherwood Spencer, at Charleston, West Virginia, and turned over to him the responsibility of negotiating with the attorney and the power to make any decisions that might flow therefrom.

That same day around noon Spencer communicated with the attorney by telephone and made demands similar to those Moyer had made upon appellant. The attorney informed him it would be necessary to consult and reach a decision with appellant concerning the controversy, and then he requested a list of appellant's employees who had become members of Local 347. Spencer refused to reveal the names of any who were affiliated with the union. However, he added he would produce at a meeting the cards of the ones who had signed up, which he asserted to be a majority of those working for appellant, provided, if such a disclosure were brought to light, appellant would recognize the union.

The attorney at this point suggested that all discussions be deferred until the next week. This Spencer refused to agree to. Gertrude Shockey, who he claimed had been wrongfully discharged, was immediately reinstated in her job. The attorney stated he would be compelled to ascertain what appellant's advice was as regards the subjects they had talked over. The telephone conversation ended with a promise upon the attorney's part to promptly confer with appellant and, having done so, to call back in a little while and give Spencer appellant's decision.

It was 6:00 p. m. that day before the attorney contacted Spencer again over the telephone. The conversation was a brief one. The attorney told Spencer that appellant was not going to recognize the union for any purpose, that he had no intention of reemploying Gertrude Shockey, declaring she had quit her job and had not been discharged, and that, in short, appellant had in mind closing the door to any future dealings with the union.

A strike was called the next day in which only three of appellant's employees participated. These persons, together with Gertrude Shockey, the former employee alluded to several times hereinbefore, and one Oscar S. Salyers, a nonemployee, established a picket line at appellant's business location at 2411 Thirteenth Street. No attempt has ever been made to picket the other store.

Appellant on April 14, 1956, filed his complaint seeking a temporary restraining order and a permanent injunction against the picketing of his markets by members of Local 347 and by the three workers who went on strike. The temporary restraining order issued and remained in effect pending the trial of this action on its merits. The disposition of this case in circuit court resulted in a dismissal of the complaint and a judgment authorizing picketing.

Cantrell has appealed and has raised these questions: (1) Was there a labor dispute between appellant and his employees? (2) Did the union representatives and the striking employees coerce and intimidate appellant's employees? (3) Has the conduct of the union representatives and the striking employees violated the provisions of KRS 336.130, so as to destroy their right to seek recognition of the union as the exclusive bargaining agency of all of appellant's employees?

■ Our answer to the first inquiry is that unquestionably a bona fide labor controversy arose and still exists between appellant and certain of his employees. Nine of his workers joined the union and, according to the record, have retained their membership therein. The fact that appellant was importuned by the proper union representatives to recognize Local 347 as the bargaining agency of his employees affiliated with this local, and the further fact that he declined to honor this request, created a sufficient grievance upon which to base the measures resorted to by the union. KRS 336.130(1) provides, insofar as it is pertinent here, that industrial workers may "associate collectively for self-organization

and designate collectively representatives of their own choosing to negotiate the terms and conditions of their employment to effectively promote their own rights and general welfare."

If the language of the statutory quotation means anything, it clearly signifies that members of a labor organization may select a bargaining agency of their choice for the accomplishment of the purposes noted. A labor union is such an agency; and a demand that the employer deal with the union as the authorized agency of his employees is frequently the object of their concerted action. See Restatement of the Law of Torts, Vol. 4, Sec. 785, p. 125. Therefore, appellant's employees who joined the union could strike and picket peacefully until the concession demanded by them is granted.

■ Nor may organized activity directed against an employer be denied to a minority group. We stated in Broadway & Fourth Ave. Realty Co. v. Local No. 181, Ky., 244 S.W.2d 746, 749, that: " 'This object (concerted action) is proper though the union includes more than the employees of the employer and though the individuals acting as representatives of the union and of the employees are not employees of the employer at all. Likewise, in the absence of applicable legislation to the contrary, this object is proper though only a minority of the employer's employees are members of the union or engage in the concerted action.' " KRS 336.130(1) also reads in part: "Employes, collectively and individually, may strike, engage in peaceful picketing, and assemble collectively for peaceful purposes."

■ The next contention is that the union attempted, through its representatives and certain employees, to organize appellant's workers contrary to the desire of many of them and by the employment of unfair tactics. It is our view the evidence in this case, taken as a whole, does not bear out these claims. Several persons testified they were told by Moyer or others connected with the union that they would lose their jobs if they did not join up, or that they would be compelled to sign up with the union in any event if appellant's employees were organized. Some stated misrepresentation was used to solicit their membership. None of those testifying in this vein seemed to have been influenced by these statements because most of them rejected the union. All of the employees who became union affiliates, except the four referred to, refused to cooperate in the strike, and those unionized employees remaining on the job testified that the arrangements of their employment with appellant were satisfactory. There is an entire absence of evidence that any of appellant's employees were induced to act through threats or any sort of intimidation. We therefore conclude, as did the lower court, that no one connected with the union employed illegal measures to secure members for the organization.

It is lastly insisted the end in view of the picketing here was an unlawful one. A careful reading of appellant's argument on this precise issue leads one to believe he conceives the picketing of his store, although such has been carried on peacefully, to be a form of economic pressure rather than a means of communicating the facts of a labor dispute. The ultimate purpose of the picketing, he insists, would necessarily compel him to force his employees to join the union.

The legislative pronouncement in regard to striking and picketing in this state is contained in KRS 336.130(2), which reads: "Neither employers or their agents nor employes or associations, organizations, or groups of employes shall engage or be permitted to engage in unfair or illegal acts or practices or resort to violence, intimidation, threats, or coercion."

■ The Supreme Court of the United States has said that peaceful picketing comes within the area of speech and is protected by the Fourteenth Amendment of the Federal Constitution. Nevertheless, there

is an element of economic coercion inherent in every act of picketing, although the primary motive behind the act may be to disseminate information concerning a labor grievance. This statement from Bakery and Pastry Drivers, etc., v. Wohl, 315 U.S. 769, 776, 62 S.Ct. 816, 819, 86 L.Ed. 1178, seems to sum up the situation in this respect: "Picketing by an organized group is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated."

However, the inquiry in every case involving picketing in this jurisdiction, where a bona fide labor dispute has developed between the employer and the employed, is whether the actual communication of facts and ideas has been departed from to the extent that the statutory or common law of this state and particularly KRS 336.130(2) is being violated.

When we apply this test to the instant action, we conclude that a valid industrial controversy has arisen and still exists between appellant and appellees. There has been no rioting, no mass picketing, no violence, no disorder, no fisticuffs, no coercion, indeed nothing but speech, and it follows that the picketing falls within the protection afforded by the Fourteenth Amendment of the Federal Constitution.

Appellant strongly maintains the case of Blue Boar Cafeteria Co., Inc., v. Hotel & Restaurant Employees, etc., Ky., 254 S.W. 2d 335, controls here. We do not agree. We reasoned in the Blue Boar case that the particular labor unions involved not only did not have a picketable right to assert, since no valid labor dispute ever came into existence, but that recognition of these unions by Blue Boar, after all of its bona fide employees had refused to become union affiliates, would have amounted to coercion of them on the part of the employer. We have

shown that a different factual pattern evolved in the case at bar.

We are of the opinion the lower court correctly adjudicated all the aspects of this case.

Wherefore, the judgment is affirmed.