MARINE OFFICERS ASSOCIATION, LOCAL UNION NO. 54, etc., et al., Appellants,

v.

OHIO RIVER SAND COMPANY, Appellee.

Court of Appeals of Kentucky.

May 28, 1971.

 

Ralph H. Logan, Hardy, Logan & Tross, Louisville, for appellants.

W. Bruce Baird, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, for appellee.

REED, Judge.

This case involves the issue of whether "supervisors" as contrasted with "employees" may be enjoined by the courts of this state from engaging in concerted activities, including picketing, for the purpose of securing recognition by their employer of a union local, composed of "supervisors" only, to which they belong, as their collective bargaining agent. The circuit court permanently enjoined the concerted activities which included picketing, in the course of which customers were advised not to trade with the employer, and nonstriking employees were requested not to continue to work. The circuit court's judgment also recited that peaceful activities for legal purposes were not prohibited. The striking employees and their union local appeal.

Appellants assert that under the facts presented the state court was without jurisdiction to afford injunctive relief. They also argue that even if the state court had jurisdiction of the controversy, the concerted activities in which they were engaged were not enjoinable under the laws of this state. The appellee-employer urges that the state court did have jurisdiction over the subject matter of the action and that the concerted activities were properly enjoined because they were being engaged in for an unlawful objective.

The appellee is engaged in the business of dredging sand and gravel from the Ohio River, transporting it to its facilities in Jefferson County, storing it in its yard and making sales thereof from the plant. Appellee employs approximately 50 nonsupervisory employees at this plant. Teamsters Local Union No. 89 filed a representation petition with the National Labor Re-

lations Board in which the union claimed to represent a majority of appellee's yard, dredge and towboat employees working out of the plant. Thereafter, the National Labor Relations Board, through its regional director, issued a "Decision and Direction of Election" which directed an election among all employees employed by appellee on its dredges, towboats and barges and at its dock and yard at Louisville, Kentucky, *excluding captains, pilots, night dredge operators and supervisors*. In the course of its findings, the N.L.R.B. stated that Timberlake, a dredge captain, Hyden, a night dredge operator, Angelo Pope, a towboat captain, and Parker Pope, a night towboat pilot, were supervisors and they were excluded from the unit found to be appropriate. As a result of that decision, an election was conducted by the N.L.R.B. and Teamsters Local Union No. 89 won the election and was certified as the collective bargaining agent for all of the appellee's employees referred to in the findings except for the supervisors.

Comparatively shortly thereafter, the appellant union, Marine Officers Association Local Union No. 54, also affiliated with the Teamsters national union, undertook to organize certain of the appellee's supervisors. The four individuals named as supervisors in the N.L.R.B.'s decision signed authorization cards for the appellant union local, and undertook to designate the appellant union local as their sole collective bargaining agent on all matters affecting their wages, hours, and working conditions with the appellee. After receipt of the authorization cards, the president of the appellant union local sent a telegram to the appellee-employer which made immediate demand for recognition as the bargaining representative covering the four named individuals "and all supervisors as defined in the National Labor Relations Act." The appellee declined to meet and bargain with the appellant union. The four individual supervisors and their union local decided to put up a picket line, the admitted purpose of which was to force

or require appellee to deal with the appellant union local as the supervisors' collective bargaining representative.

The appellant individual supervisors engaged in a strike for four days until restrained by order of the circuit court. There is no disagreement concerning the activities engaged in by the individual supervisors in order to secure recognition of appellant union. The appellants do not deny that they requested the appellee's customers to make purchases from its competitors; that they requested nonstriking employees to cease work and that other employees of appellee, all of whom were members of the Teamsters Union, did not report for work as scheduled because of the picket line set up by appellants.

Section 14(a) of the National Labor Relations Act, 29 U.S.C. § 164(a), reads as follows:

"(a) Nothing herein shall prohibit any individual employed as a supervisor from becoming or remaining a member of a labor organization, but no employer subject to this subchapter shall be compelled to deem individuals defined herein *as supervisors as employees for the purpose of any law, neither national or local, relating to collective bargaining.*" (emphasis supplied).

■■■ Appellants first argue that in the federal courts an injunction cannot be issued to enforce the provisions of Section 14(a) of the National Labor Relations Act by reason of 29 U.S.C. § 104 which is popularly known as the Norris-LaGuardia Act. This court held in Armco Steel Corp. v. Perkins, Ky., 411 S.W.2d 935 (1967), that section 104 of the Norris-LaGuardia Act does not prohibit the courts of this state from giving injunctive relief in labor disputes in appropriate circumstances. The Supreme Court of the United States in Boys Market, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), overruled a previous decision and held that the anti-injunction provisions of the Norris-LaGuardia

Act did not preclude a federal district court or a state court from enjoining a strike in breach of a no-strike obligation under a collective bargaining agreement that contained an arbitration provision. This decision answered what had been hinted at but left open in Avco Corporation v. Aero Lodge, 735, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). Hence, it would appear that the trend of the Supreme Court's current teaching is veering away from regarding the anti-injunction provision of the Norris-LaGuardia Act as the categorical imperative laid down in A. H. Bull S.S. Company v. National Marine Engineers Beneficial Association, 250 F.2d 332 (C.A. 2, 1957). In any event, the jurisdiction of a state court under the factual situation presented here is settled in Hanna Min. v. Dist. 2, Marine Engrs., 382 U.S. 181, 86 S.Ct. 327, 15 L.Ed.2d 254 (1965).

In the Hanna case, the Supreme Court held that the National Labor Relations Act did not pre-empt the state's authority to enjoin a union from alleged organizational picketing of an employer's premises where the National Labor Relations Board had previously determined that the employees were supervisors within the meaning of the act. The case of Marine Engineers Beneficial Ass'n v. Interlake S.S. Co., 370 U.S. 173, 82 S.Ct. 1237, 8 L.Ed.2d 418 (1962), was distinguished; there the court had overturned a state ban on picketing because the N.L.R.B. had not determined the employees concerned to be supervisors. Appellants rely upon the Interlake case and argue that appellee should have exhausted the unfair labor practice procedure before resorting to a state court. That contention, however, we consider was answered adversely to appellant's argument in the recent case of Magnesium Casting Co., v. N.L.R.B., 401 U.S. 137, 91 S.Ct. 599, 27 L. Ed.2d 735 (1971).

In the Magnesium case the Supreme Court unanimously upheld the contention of the union that the determination of the regional director of the N.L.R.B. concern-

ing the composition of membership of the appropriate bargaining unit, where the director had included assistant foremen as employees rather than supervisors, was equivalent to a finding of the board itself. Hence, upon the holding of the Magnesium Casting Company case as applied to the ruling in Hanna, we are convinced that for purposes of the National Labor Relations Act, the individual appellants herein have been conclusively determined to be "supervisors" within the meaning of the National Labor Relations Act.

In Safeway Stores, Inc. v. Retail Clerks Int'l Ass'n, 41 Cal.2d 567, 261 P.2d 721 (1953), the California Supreme Court held that concerted activities by retail store managers who were supervisory personnel to pressure their employer to bargain collectively with them and their union, which included clerks in the stores, was contrary to the public policy of California and enjoinable. The Supreme Court of California considered such concerted activity, including picketing, to be for an unlawful objective. There was a dissent that relied, in part, upon the decision of the Supreme Court in Packard Motor Car Company v. National Labor Relations Board, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947).

The pronouncements made in the Packard case, however, are no longer significant because the word "employee" was redefined by Congress following the Packard decision. The loss of vitality of the Packard decision is pointed out by the dissent of Mr. Justice Douglas in the Interlake case. Nevertheless, we do not regard it necessary to base our ruling upon a judicial declaration of state public policy as was done by the California Supreme Court majority in the Safeway case. We are convinced that the legislative declarations of Congress and our own state legislature warrant the result that we reach.

KRS 336.130 provides that employees may, free from restraint or coercion by the employers or their agents, associate col-

lectively for self-organization and designate collectively representatives of their own choosing to negotiate the terms and conditions of their employment to effectively promote their own rights and general welfare. Employees are given the right by this statute to strike, engage in peaceful picketing, and assemble collectively for peaceful purposes; neither employers or their agents nor employees or associations, organizations or groups composed of either employees or employers are permitted to engage in unfair or illegal acts or practices or resort to violence, intimidation, threats or coercion by express language of the statute. See KRS 336.-130(2).

In Cantrell v. Food Store Employees' Union, Ky., 309 S.W.2d 335 (1958), we declared that the inquiry in every case in this jurisdiction involving picketing was first whether a bona fide labor dispute had developed between the employer and his employee; if such labor dispute is established, then the question is whether the communication of facts and ideas by the picketing has been departed from to the extent that the statutory or common law of this state and particularly KRS 336.-130(2) is being violated. In Blue Boar Cafeteria Co. v. Hotel & Restaurant, etc., Ky., 254 S.W.2d 335 (1953), we held that where no valid labor dispute had ever come into existence, picketing of an employer by strangers without a picketable right to assert was enjoinable. In National Electric Service Corp. v. Dist. 50, etc., Ky., 279 S.W.2d 808 (1955), it was held that the Blue Boar doctrine could not be applied where the picketing was of an employer subject to the National Labor Relations Act where such picketing would also constitute an unfair labor practice under the provisions of the National Labor Relations Act.

In Broadway & Fourth Ave. Rlty. Co. v. Local No. 181, Ky., 244 S.W.2d 746 (1941), we said that if the object of the strike is an act against which the law has definitely set its face, it is not a proper object of concerted action.

In the case before us, the employer is subject to the National Labor Relations Act. Indeed, the parent union of the appellant local has been certified as the collective bargaining agent for all of the employer's workers at this plant who are employees according to Congressional declaration. The Supreme Court said in Hanna that the "Congress' propelling intention was to relieve employers from any compulsion under the Act *and under state law* to countenance or bargain with any union of supervisory employees." A more specific statement could hardly be imagined. Hence, we are directed to the inevitable conclusion that appellants were engaged in concerted activity including picketing in order to accomplish an objective against which the law had definitely set its face. Moreover, they were beyond the jurisdiction of the National Labor Relations Board by the terms of its own directive.

A conclusion to the contrary is represented in the Memorandum Decision of the Court of Appeals of New York in the case of District 2, Marine Engineers Beneficial Association, et al. v. New York Shipping Association, 22 N.Y.2d 809, 292 N.Y.S.2d 908, 239 N.E.2d 650 (1968). We are unable to follow this decision because: first, the A. H. Bull case from the Second Federal Circuit on which the New York decision relies is based upon a fundamental approach to the meaning of the Norris-LaGuardia Act which has been eroded by the subsequent decisions of the U.S. Supreme Court cited herein and, second, the New York statute concerned in the decision, which is a so-called "little Norris-LaGuardia Act," has never represented the law of this jurisdiction concerning the proper scope of equitable remedies in this field.

We are persuaded that there should be minimal basic difference in the current state of labor law in dealing with the com-

plex and troublesome problem of federal-state relationship as to jurisdiction and remedies so far as this state's jurisdiction is concerned. If it be true that state and federal courts have concurrent jurisdiction to apply a body of federal law and enjoin under proper circumstances a strike in violation of a contract containing a no-strike clause and requiring compulsory arbitration, then if federal law directs that supervisors shall not be considered employees for the purpose of compelling an employer to bargain collectively with them or to countenance or bargain with any union of supervisory employees, the reason for the policy result in both instances must be that the arena of dispute has been withdrawn from the area of the National Labor Relations Board and placed in the supervision of the courts to fashion relief from violations of what is considered legislatively declared public policy in labor management relations.

We are keenly aware of labor's fundamental right to strike and peacefully picket. We propose to protect those fundamental rights. In the instance before us, the right of the individual appellants to retain their membership in a labor union or to become members of a labor union is fully protectable. Once, however, appellants sought by this uncontradicted record to engage in concerted activities, including picketing, for the sole purpose of compelling their employer to bargain collectively with them, and to countenance a union of supervisors, they were plainly beyond the pale. They were not then employees within the meaning of our Kentucky statute and they were transformed into the same legal posture as strangers picketing for a plainly unlawful objective. Their only purpose in picketing was to achieve an objective against which, according to the Supreme Court of the United States, the law has definitely set its face.

The judgment of the circuit court is affirmed.

All concur.